UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

KALABRYA HASKINS,

        Plaintiff,

v.

KEELY HILL A/K/A "THE BOSS",
MICHAEL MAURICE PENNEL JR.,
A/K/A MIKE PENNEL,
A/K/A "THE BEAST",
ADAM COMPO,
BLK CAVIAR BULLIES LLC,
a Florida Limited Liability Company,
BOSSED UP ENTERPRISES, LLC,
d/b/a BUSINESS BOSS PRO,
a Georgia Limited Liability Company.

        Defendants.

_____/

## COMPLAINT

Plaintiffs, Kalabrya Haskins ("*Haskins")* sues Defendants Keely Hill ("*Hill*"), Michael Maurice Pennel JR a/k/a Mike Pennel a/k/a "The Beast" ("*Pennel*"), Adam Compo ("*Compo*"), BLK Caviar Bullies LLC ("*BLK Bullies*") and Bossed Up Enterprises LLC ("*Boss Enters.*") (collectively "*Defendants*" and "*Conspirators*"), and states:

## PRELIMINARY STATEMENT

1. This case arises from a predatory scheme concocted by the Defendants in violation of 15 U.S.C. § 1679 et seq to take financial advantage of Haskins, a recent widow, musician, blossoming artist, young entrepreneur, new mother, and the presumptive heir to the estate of the late and great Dwayne Haskins, Jr. It relates to three cases previously filed by Pennel and Hill in this district court., namely: *Pennel et al v. Hill et al*, Case No. 1:24cv23686

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

(SD. Fla. Sep. 25, 2024) (closed by clerk); *Hill et al v. Haskins*, Case No. 1:24cv23680 (SD. Fla. Sep. 25, 2024) (closed by clerk); *Hill et al v. Haskins*, Case No. 1:24cv23688 (SD. Fla. Sep. 25, 2024) (assigned to Judge Jose E. Martinez, and then voluntarily dismissed) (collectively the "*Pennel and Hill Suits*").

2.     Together and in concert, the Defendants conspired and formed an enterprise that swindled Haskins out of hundreds of thousands of dollars of cash, lost business opportunities, and Haskins' family dogs, Brutus and Boujee (collectively "*B&B*", and B&B collectively with their litters the "*Haskins' Dogs*"). Consequently, Haskins is forced to file this lawsuit to recover from the Conspirators' schemes.

## PARTIES, JURISDICTION, AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4.     Defendants Hill and Pennel purposely availed themselves to the jurisdiction of this court by filing *Hill et al v. Haskins*, Case No. 1:24cv23688 (SD. Fla. Sep. 25, 2024) (assigned to Judge Jose E. Martinez, and then voluntarily dismissed)

5.     This Court has venue over this litigation pursuant to 28 U.S.C. §§ 1391(b) and (c).

6.     This is an action for damages more than $75,000.00, exclusive of interest, attorney's fees, and costs.

7.     On information and belief, Hill resides in Broward County Florida at 17406 SW 41st Miramar, FL 33025.

8.     Haskins resides in Broward County Florida.

9.     On information and belief, BLK Bullies is a Florida Limited Liability Company with an actual principal place of business at 17406 SW 41st Miramar, FL 33025 and reported address of 1110 Brickell Ave. Suite 400K-191 Miami, FL 33131.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

10. On information and belief, Boss Enters. is a Georgia Limited Liability Company that regularly transacts business in Florida and has a principal place of business at 17406 SW 41st Miramar, FL 33025 and previously operated from 11756 SW 26th Ct Miramar, FL 33025-7506.

11. Pennel resides in Miami Florida. *See Hill et al v. Haskins*, Case No. 1:24cv23688, ECF No. 1 ¶ 5 (SD. Fla. Sep. 25, 2024) (assigned to Judge Jose E. Martinez, and then voluntarily dismissed). Pennel regularly travels around the country and to the Dominican Republic where Pennel is believed to own a home and intends to retire.

12. On information and belief, Compo has a residence at 220 Admiral Blvd, Apt 308 Kansas City, MO 64106.

13. Venue is proper in Broward County, Florida as Hill resides in Broward County and the causes of action set forth herein accrued in Broward County. Hill and her coconspirators formed BLK Bullies using a reported address of 1110 Brickell Ave. Suite 400K-191 Miami, FL 33131.

14. Hill and her coconspirators, Pennel and Compo directed their actions at Haskins who they knew would be harmed in Florida.

15. This Court has personal jurisdiction over the Conspirators, because the Conspirators regularly conduct and transact business in the State of Florida and in this District.

16. Upon information and belief, Conspirators have entered contracts with one or more residents of the State of Florida to supply products or services within the State of Florida, including in this District, including but not limited to Haskins.

ASSOULINE & BERLOWE, P.A.

Miami Tower • 100 SE 2ⁿᵈ St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## GENERAL ALLEGATIONS

### The Victim

17.    Haskins is an athlete, artist, entertainer and influencer. Haskins also comes from a family of well-known athletes. Haskins played basketball and graduated from Michigan State. Haskins is the sister of WNBA player Kysre Gondrezick. Haskins is the daughter of the late former NBA player Grant Gondrezick and Lisa Harvey ("**Haskins' Mother**"). Grant Gondrezick played college basketball at Pepperdine. Lisa Harvey won a national title at Louisiana Tech.

18.    Haskins' late husband Dwayne Haskins, Jr. was a former first-round NFL pick. Dwayne Haskins, Jr was only 24 years old at the time of his death.

19.    After the death of Dwayne Haskins, Jr., Haskins coped with the grieving by focusing on her music career, influencer status, several fashion brands and businesses opportunities including a fashion brand originally started by her and her late husband. She also began considering breeding B&B who were one of the most precious joys she shared with her late husband, Dwayne Haskins, Jr. B&B were like children to the Haskins.

20.    To that end, around October of 2023, Haskins was introduced to Hill, through Hill's purported brother Rodney Hill ("**Rocko**"). Around that time, Hill was pregnant with Pennel's second son, and Haskins was pregnant with Haskins' daughter.

21.    Notably, Haskins eventually worked with Rocko through a record-label and publishing company that Haskins and Rocko formed in early 2024 and co-owned called 730 Global, LLC. At the time of her grieving, Haskins felt that Rocko's family was Haskins' family.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

**The Conspirators**

22.     Haskins trusted Hill because Hill was Rocko's sister, a mother, and a reality TV show actress that claimed to have a long list of celebrity support.

23.     Haskins and Hill frequently shared very personal and private details of their lives, the joys and pains of pregnancy and details of intimate relationships with American Footballers.

24.     According to Hill, Hill is a music representative and talent agent. Hill claims to be a graduate of the Hampton University Class of 2008. Hill also claims she worked at Island Def Jam Music Group directly with celebrated artists such as Rihanna, Rick Ross, Kanye West, and Mariah Carey, and others. Hill runs Boss Enters. from her residence in Miramar.

25.     Hill even sent Haskins the following photo to bolster her claims:



**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343



26.     Notably, Hill's misrepresentations to Haskins were augmented by the fact that Hill was a supporting actress on the seventh season of Love & Hip Hop: Atlanta, a docudrama that purportedly focuses on the people of "dirty south" hip hop.

27.     On information and belief, despite her misrepresentations and short stint on "Love & Hip Hop," Hill has neither worked directly with Rihanna, Rick Ross, Kanye West, nor Mariah Carey.

28.     Rather on information and belief, Hill is the mother to the son of Barima McKnight a/k/a Bleu Da Vinci ("*BDV*") known for his association and membership of the Black Mafia Family, and the sole recording artist on Black Mafia Family Entertainment through which BDV was formerly associated with Rick Ross and other well-known entertainers.

29.     Pennel is with the Kansas City Chiefs, the father to Hill's youngest son and holds himself out as Hill's significant other.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

**The Conspiracy**

30.     Hill used her misrepresentations of celebrity contacts, Hill's appearance on Love & Hip Hop, and Hill's affiliation with BDV and BDV's alleged contacts to convince Haskins that Hill could help Haskins' career as a rising artist in the music industry.

31.     Circa November 2023, Haskins was looking to replace Haskins' personal assistant and Hill offered to help Haskins replace her personal assistant and to manage Haskins' businesses, including to procure employment and new opportunities for Haskins as an artist and entertainer.

32.     Hill started assisting Haskins with arrangements for the walking and care of Haskins' dogs.

33.     It is believed during this time that Hill realizing that Haskins trusted Hill and would pay her invoices based upon that trust, Hill enlisted the cooperation of her coconspirators, Pennel and Compo.

34.     Haskins explained to Hill that Haskins was in the process of moving to Florida and that Haskins had previously established several businesses in Georgia that Haskins wanted to create new Florida companies with the same names and in similar lines of business in anticipation of Haskins' move to Florida where Haskins intended to be domicile and reside.[1]

35.     Hill represented to Haskins that Hill was already in Florida and as Haskins' manager could help Haskins incorporate and form such businesses, including new business entities to be called Luxuri Lifestyle, LLC, Luxe Deluxe, LLC, and Xuri Capital, Inc.

---

[1] The entities that Hill agreed to establish for Haskins in Florida included Bulldog Babies, LLC, Boujchic, LLC, Kalabrya's Kloset, LLC, Kleo Empire Enterprises, LLC, 730 Global, LLC, Kingdom of Pride, LLC and Dwayne Haskins Jr. Foundation, Inc.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

36.     Hill further represented to Haskins that Hill would create revenue for Haskins by monetizing Haskins' social media as an artist and an influencer and help Haskins build Haskins' soon to be formed Florida businesses.

37.     Specifically, Hill represented that Hill and Pennel, who was Pennel's boyfriend and at the time soon to be father of Hill's most recent son, would use their industry contacts and influence to have a major music label to put a budget behind Haskins as an artist and Hill promised Haskins that in return for accepting her services Hill would procure Haskins a major record label deal. Pennel was introduced as part of Hill's team.

38.     Hill advised Haskins that Hill was close friends with Randall McMilliam who Hill claimed was vice President of Business and Legal Affairs for the record label, "Roc Nation" owned by Shawn Corey Carter a/k/a "Jay-Z," and that McMilliam handled the contract negotiation for Hills' music, business and television deals, and that McMilliam would be assisting Haskins.

39.     Around February of 2024, Haskins received a report of unusual activity on Haskins' credit report.

40.     At that time, despite the unusual activity, Haskins had good scores with at least TransUnion and Equifax.

41.     When discussing this with Hill, who by that time was already Haskins' talent and business manager, Hill represented to Haskins that as her manager and agent Hill could analyze Haskins' credit, reach out to any creditors and challenge the validity of any adverse credit reporting.

42.     Hill told Haskins that she would place an alert of Haskins' credit file and clean up Haskins' "lexis nexis." Haskins was unaware of the meaning of "lexis nexis," and asked Hill what

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Hill was offering. Hill explained that "lexis nexis" is a database of the public records and that Hill could freeze it. Hill advised Haskins that she would clean Haskins' credit in a couple weeks.

43. However, Hill also advised Haskins that credit is "ongoing process," and that Hill would clean Haskins' credit, build Haskins' credit, and maintain Haskins' credit. Hill also advised Haskins that Hill would clean, build and maintain credit for Haskins' businesses the Hill agreed to establish in Florida.

44. Hill represented to Haskins that with help of Hill's Team, i.e. the Conspirators and other contacts of Hill, they would improve Haskins credit through derogatory item removal, late payment removal and public records "editing."

45. Hill promised Haskins that Hill could procure multi-millions of dollars of trade lines for Haskins' personal credit report and for each of Haskins personal businesses that Hill would form in Florida to improve Haskins' personal credit score and help Haskins get favorable financing for Haskins' new home in Florida.

46. Hill also advised Haskins that Hill would connect Haskins with a special Florida real estate agent that would be able to work with Haskins credit that Hill and her team would advise Haskins how to present her application to get the best rates.

47. Hill then sent Haskins several invoices for Haskins' personal credit and Haskins' businesses that Hill advised Haskins that Hill would establish in Florida to improve Haskins' overall personal credit. Haskins, trusting Hill, paid those invoices.

48. Conspirators while operating in Florida, misrepresented to Haskins that in return for the payment of money and other valuable consideration, Conspirators would, *inter alia*,:

 a. improve Haskins' credit record, history, and rating;

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2ⁿᵈ St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

b. obtain extensions of credit for Haskins individually and through the to be formed Florida entities; and

c. provide advice and assistance to Haskins with regard to the services above.

(collectively the "***Credit Services Organization Agreement***").

49. Hill, Haskins, and Haskins' Mother had a video conference with Pennel. Pennel provided Haskins, Hill and Haskins' Mother videos and photos of Pennel's house in the Dominican Republic and his dog breeding operation that Pennel claimed to operate in Miami and the Dominican Republic. It was explained to Haskins that Miami was essentially Pennel's gateway to the Dominican Republic. Pennel represented that he had staff in both locations and people to care for dogs while they were breeding. Pennel represented that Haskins' dogs could be safely bred with up two litters a year with an average of about five to six dogs per litter. Having the breeding business with Pennel was expected to build consistent income to help Haskins' credit and brands recognition improve. The collaboration of Pennel with Haskins in breeding B&B was expected to bring a special celebrity status to the dogs and their litters.

50. Based upon Pennel's representations, with their bloodline and training B&B were each estimated to be worth about $20,000.00. With two average litters in the first year, Haskins expected about $200,000.00 to $240,000.00 in puppies within the first year. If half of those puppies were female and Pennel were to breed the females again Haskins expected ~$1,440,000.00 or more in the second year and ~$8,640,000.00 in the third year, and so on. The growth was expected to be exponential. And, better yet, it would continue the legacy and memories that Haskins began with her late husband, Dwayne Haskins, Jr.

51. Pennel and Hill sold Haskins on the idea of using Pennel's company to breed B&B.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

52.     Around this time, Hill and Pennel also introduced Haskins to Compo. Haskins needed a stylist for her music videos and Compo had supposedly done work for Pennel and Compo also represented to Haskins that Compo worked with Aubrey Drake Graham a/k/a "Drake."

53.     Hill and Pennel represented to Haskins that Compo helped Pennel with his own clothing line "BLK Caviar Vintage" and Compo had his own clothing company that could help Haskins with her business that she was planning on launch in August called Kalabrya's Kloset. See, e.g., https://www.instagram.com/blkcaviarcurations (last accessed Oct. 7, 2024) and https://www.wycovintage.com/ (last accessed Oct. 7, 2024).

54.     Hill and Pennel also represented to Haskins that Compo would be able to establish social media and website ecommerce platforms for Haskins' brands that Haskins' was launching including but not limited to Kalabrya's Kloset, the Dwayne Haskins Jr. Foundation, Kingdom of Pride, and Boujchic.

55.     In furtherance of the scheme, Compo and Hill offered to clean Haskins' online presence and build Haskins' credit and public image through the Internet campaign led by Compo.

56.     Hill and Compo represented to Haskins that Compo would assist Hill with the credit repair and building for Haskins by building Haskins' online identity and procuring and managing social media accounts regarding Haskins name and likeness including that of her various brands that she was launching.

57.     Hill promised Haskins that Hill and Compo would remove (or cause to be removed) all the pages that impersonated Haskins on the Internet and delete and/or remove any pages that were using Haskins' trademark business names or that were deemed by Hill to be negative for Haskins' brands and personal credit.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

58.     As per Compo's instructions, Haskins had her merchandise shipped to Compo, who Haskins was trusting to work with Hill and Pennel to build the various brands to be launched in August of 2024.

59.     Compo advised Haskins that in coordination with Hill he was working of various social media accounts such as Instagram, Facebook, Snapchat, and TikTok for Haskins' various brands and companies that Haskins was launching when she moved to Florida.

60.     Compo advised he was making specific shirts for Haskins for the launch of her official website at Kalabrya.com and setting up shopify accounts for all of Haskins' businesses that Haskins was launching in Florida.

61.     As her manager and agent, Hill advised Haskins that Haskins should have, and that Hill would have, people that come in close contact with Haskins sign confidentiality and non-disclosure agreements (each an "*NDA*"). Notably, despite Haskins' protest Hill instructed Haskins to keep her pregnancy status secret as according to Hill it might harm Haskins' career.

62.     Hill represented to Haskins that Hill was familiar with NDAs and that Hill had specifically created an NDA for Haskins that Hill recommended that Haskins have everyone sign. Many of the NDAs that Hill created for Haskins implied that they were created by and/or to be returned c/o Arrington & Phillips, LLP, 2200 Fairburn Rd. SW., Atlanta, GA, 30331, a law firm in Atlanta Georgia. The NDAs may have been originally drafted by the attorneys of Arrington & Phillips, but on information and belief were modified by Hill.

63.     Hill represented to Haskins that Hill and Haskins' communications were confidential and would be protected as confidential and that Hill had signed an NDA and that it was stored with the other NDAs that Hill was managing for Haskins, including an NDA for Hill's

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Assistant Ariana Herriott. However, on information and belief Hill later removed the NDA that Hill signed from the storage.

64.     Hill undertook responsibility to require persons exposed to Haskins sign NDAs, whether they were stylists, business advisors, and/or persons attending one or more of Haskins video shoots. Even Compo signed an NDA agreement prepared by Hill.

65.     On information and belief, Hill also represented to Haskins and third parties that the opinions Hill expressed regarding legal documents were made by record label's legal counsel based upon record label's legal counsel's review of the documents, when in fact the opinions were Hill's based upon solely Hill's interpretation of the documents.

66.     On information and belief, Hill is not licensed as an attorney in Florida nor any other state.

67.     Hill undertook acting as Haskins' actual and apparent agent and communicated confidential, personal, private, privileged information to and from Haskins' attorneys and informed those attorneys that Hill was acting as Haskins' agent.

68.     Clearly, Hill understood that information provided to her by Haskins was expected to be private and protected as confidential and that Haskins imposed great trust in Hill.

69.     Notably, also, around April of 2024, Hill offered to provide Haskins with tax management services and sent her an IRS form 8222-B form and photo allegedly of the other talent that Hill was managing their credit and taxes.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343



That's a batch of phase 2 processes for my clients

70.     Hill advised Haskins that Pennel would be traveling to the Dominican Republic on or about March 22, 2024 to check in on his breeding operation and coordinate for B&B.

71.     Then, between April and May of 2024, Hill introduced Haskins to Pet Limo services to transition B&B to the Dominican Republic.

72.     On or about April 19, 2024, Hill confirmed speaking with Pet Limo Services to start the process of relocating B&B for the breeding operation that Hill and Pennel represented was owned, controlled and operated by Pennel.

73.     Hill instructed Haskins to ship B&B's medications, belongings, and documents to Miami where Pennel or his employee, Kelvin Nunez, would ship or bring them to the Pennel's breeding operation in the Dominican Republic. Hill advised Haskins that sending the dog's belongings to the Miami location was the safest way to ship them to the Dominican Republic. On multiple occasions Nunez represented to Haskins that he worked for Pennel.

74.     Around June 5, 2024, Hill advised Haskins that Boujee passed.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

75. Around June 6, 2024, Haskins requested a photo of Boujee and Hill advised Haskins that she would ask Pennel.

76. Hill advised Haskins that she would ask Pennel to message Hill confirmation that the Boujee had passed, because the photo would be too graphic and disturbing for Haskins who was obviously very disturbed by the situation.

77. Pennel confirmed that Boujee passed.

78. In July 2024, Compo advised Haskins that he was inventorying all of Haskins' merchandise that he received for Haskins.

79. Once Haskins confronted Pennel and Hill about the dogs Compo completely ghosted Haskins.

80. On information and belief, Hill, Pennel and Compo shared their intentions and fraudulent actions with each other but concealed their knowledge of each other's harm and fraudulent actions from Haskins.

81. On information and belief, Hill, Pennel and Compo viewed Haskins as a mark and someone they could easily take advantage of.

82. On information and belief, neither Hill, Pennel, BLK Bullies nor Boss Enters. hold a hobby breeder or pet dealer license.

83. The Defendants' collective actions harmed Haskins and caused Haskins irreparable harm through the loss of Haskins' Dogs, Haskins' money, and business opportunities.

**Haskins Payments and the Fraudulent Invoices**

84. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about March 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Kleo Empire Enterprises, LLC (yet to be formed in Florida) for $29,500.00 due on

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

March 12, 2024, which included inter alia: $1,500.00 Credit Planning Fee; $500.00 Admin Fee; $500.00 Processing Fee; $25,000.00 for $1 Million Business Primary Tradeline Package; and, $2,000.00 for twelve-month business credit strategy planning and maintenance. *See* **Exhibit A**.

85. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about March 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Boujchic, LLC (yet to be formed in Florida) for $29,500.00 due on March 12, 2024, which included inter alia: $1,500.00 Credit Planning Fee; $500.00 Admin Fee; $500.00 Processing Fee; $25,000.00 for $1 Million Business Primary Tradeline Package; and, $2,000.00 for twelve-month business credit strategy planning and maintenance. *See* **Exhibit B**.

86. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about March 13, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Kalabrya's Kloset, LLC (yet to be formed in Florida) for $29,500.00 due on March 12, 2024, which included inter alia: $1,500.00 Credit Planning Fee; $500.00 Admin Fee; $500.00 Processing Fee; $25,000.00 for $1 Million Business Primary Tradeline Package; and, $2,000.00 for twelve-month business credit strategy planning and maintenance. *See* **Exhibit C**.

87. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about Mar. 18, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment of $29,500.00 by Haskins for Kleo Empire Enterprises, LLC (yet to be formed in Florida). *See* **Exhibit D**.

88. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about April 1, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment by Haskins of $20,800.00 for personal credit cleaning, credit building, tradeline package, and credit planning. *See* **Exhibit E**.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

89.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about April 1, 2024, Hill provided Haskins with a Boss Enters. with a revised receipt showing payment by Haskins of $20,800.00 for personal credit cleaning, credit building, tradeline package, and credit planning. *See* **Exhibit F**.

90.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about April 8, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment by Haskins of $19,000.00 for Social Media Cleaning Services. *See* **Exhibit G**.

91.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about April 24, 2024, Hill provided Haskins with a PetLimo invoice for $11,459.92 for transporting B&B to Miami Florida and then to the Dominican Republic for Pennel's Breeding Operation.  *See* **Exhibit H**. Haskins paid PetLimo.

92.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about May 1, 2024, Hill provided Haskins with a Boss Entrs. invoice for $16,500.00 for tradeline package for Kingdom of Pride, LLC (yet to be formed in Florida). *See* **Exhibit I**.

93.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about May 2, 2024, Hill provided Haskins with a Boss Entrs. receipt showing payment by Haskins of $29,500.00 for the Boujchic Business Credit Package. *See* **Exhibit J**.

94.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about May 7, 2024, Hill provided Haskins with a Boss Entrs. receipt showing payment by Haskins of $16,500.00 for the 730 Global Business Credit Package. *See* **Exhibit K**.

95.     Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about May 7, 2024, Hill provided Haskins with a Boss Entrs. receipt showing

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

payment by Haskins of $16,500.00 for Kalabrya's Kloset Business Credit Package. *See* **Exhibit L**.

96.    On May 13, 2024, at the demand of Hill, Haskins paid BLK Bullies $8,000.00.

97.    On May 14, 2024, at the demand of Hill, Haskins paid BLK Bullies $7,174.35.

98.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about May 24, 2024, Hill provided Haskins with a Boss Entrs. receipt showing payment by Haskins of $16,500.00 for Dwayne Haskins Jr. Foundation Business Credit Package. *See* **Exhibit M**.

99.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about May 24, 2024, Hill provided Haskins with a corrected Boss Entrs. receipt showing payment by Haskins of $16,500.00 for Dwayne Haskins Jr. Foundation Business Credit Package. *See* **Exhibit N**.

100.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about May 24, 2024, Hill provided Haskins with a third Boss Entrs. receipt showing payment by Haskins of $16,500.00 for Dwayne Haskins Jr. Foundation Business Credit Package. *See* **Exhibit O**.

101.    On May 24, 2024, at the demand of Hill, Haskins paid BLK Bullies $8,000.00.

102.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 7, 2024, Hill provided Haskins with an invoice from BLK Bullies for $6,174.85 for boarding services and emergency care for dogs including cremation fee for Boujee. The invoice included $155.33 of tax for Miami, Florida (33131). *See* **Exhibit P**. On information and belief, the invoice was fraudulent and the sales tax was not paid to the state of Florida.

**ASSOULINE & BERLOWE, P.A**.

Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

103.	Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Xuri Capital, LLC (yet to be formed in Florida) for $2,500.00 due on June 12, 2024, which included inter alia: $500.00 Admin Fee; and, $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit Q**.

104.	Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Luxe Deluxe, LLC (yet to be formed in Florida) for $2,500.00 due on June 12, 2024, which included inter alia: $500.00 Admin Fee; and, $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit R**.

105.	Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Kleo Empire Enterprises, LLC (yet to be formed in Florida) for $2,000.00 due on June 12, 2024, which included inter alia: $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit S**.

106.	Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Kingdom of Pride, LLC (yet to be formed in Florida) for $2,500.00 due on June 12, 2024, which included inter alia: $500.00 Admin Fee; and, $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit T**.

107.	Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Kalabrya's Kloset, LLC (yet to be formed in Florida) for $2,000.00 due on June 12,

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

2024, which included inter alia: $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit U**.

108.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. revised invoice to Haskins for Kingdom of Pride, LLC (yet to be formed in Florida) for $2,000.00 due on June 12, 2024, which included inter alia: $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit V**.

109.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Dwayne Haskins Jr. Foundation, Inc. (yet to be formed in Florida) for $2,000.00 due on June 12, 2024, which included inter alia: $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit W**.

110.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Boujchic, LLC (yet to be formed in Florida) for $2,000.00 due on June 12, 2024, which included inter alia: $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit X**.

111.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024, Hill provided Haskins with a Boss Enters. invoice to Haskins for Bulldog Babies, LLC (yet to be formed in Florida) for $2,500.00 due on June 12, 2024, which included inter alia: $500.00 Admin Fee; and, $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit Y**.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

112.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June. 12, 2024, Hill provided Haskins with a second Boss Enters. invoice to Haskins for Dwayne Haskins Jr. Foundation, Inc. (yet to be formed in Florida) for $2,000.00 due on June 12, 2024, which included inter alia: $2,000.00 for twelve-month business credit strategy planning and maintenance.  *See* **Exhibit Z**.

113.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024 Hill provided Haskins with a Boss Enters. invoice to for a Business and Project Management Retainer for $75,000.00. *See* **Exhibit AA**.

114.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024 Hill provided Haskins with a first revised Boss Enters. invoice to for a Business and Project Management Retainer for $64,950.00. *See* **Exhibit AB**.

115.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 12, 2024 Hill provided Haskins with a second revised Boss Enters. invoice to for a Business and Project Management Retainer for $30,000.00. *See* **Exhibit AC**.

116.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment of $2,000.00 by Haskins for Boujchic, LLC (yet to be formed in Florida). *See* **Exhibit AD**.

117.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to  48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment by Haskins of $2,000.00 for Kleo Empire Enterprises, Inc. (yet to be formed in Florida). *See* **Exhibit AE**.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

118.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment of $2,000.00 by Haskins for Kalabryas Kloset, Inc. (yet to be formed in Florida). *See* **Exhibit AF**.

119.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment by Haskins of $2,000.000 for Kingdom of Pride, Inc. (yet to be formed in Florida). *See* **Exhibit AG**.

120.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment by Haskins of $2,000.00 for Xuri Capital, Inc. (yet to be formed in Florida). *See* **Exhibit AH**.

121.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt showing payment by Haskins of $2,000.00 for Dwayne Haskins Jr. Foundation, Inc. (yet to be formed in Florida). *See* **Exhibit AI**.

122.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a second Boss Enters. receipt showing payment by Haskins of $2,000.00 for Dwayne Haskins Jr. Foundation, Inc. (yet to be formed in Florida). *See* **Exhibit AJ**.

123.    Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a Boss Enters. receipt

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

showing payment by Haskins of $2,000.00 for Bulldog Babies, Inc. (yet to be formed in Florida). *See* **Exhibit AK**.

124. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 13, 2024, Hill provided Haskins with a second Boss Enters. receipt showing payment by Haskins of $2,000.00 for Bulldog Babies, Inc. (yet to be formed in Florida). *See* **Exhibit AL**.

125. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about July 1, 2024, Hill provided Haskins with an invoice and receipt from BLK Bullies for $2,407.50 for boarding services for Brutus. The invoice included $157.50 of tax for Miami, Florida (33131). *See* **Exhibit AM**. On information and belief, the invoice was fraudulent and the sales tax was not paid to the state of Florida.

126. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about June 12, 2024 Hill provided Haskins with a Boss Enters. invoice to 730 Global LLC for a Business and Project Management Retainer for $5,000.00. *See* **Exhibit AO**.

127. On June 24, 2024, at the demand of Hill, Haskins paid BLK Bullies $7,174.35.

128. Pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, on or about July 1, 2024, Hill and Pennel's coconspirator and associate, Adam Compo provided Haskins with an invoice for $3,500.00 for a 1.0B build of Kalabrya's Kloset website. See **Exhibit AP**.

129. On information and belief, invoices in **Exhibits H** and **AM** are also fraudulent, because the services were never rendered and or costs inflated or bogus, like the Miami Dade Sales Tax. Haskins contacted the veterinarians identified in the invoices who said they never saw or cared for B&B or Haskins' Dogs.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

130.    Compo also called and texted Haskins demanding payment for his alleged services. Haskins paid Compo at least $40,998.11.

131.    Not including the value of the dogs and Haskins' Merchandise the total amount swindled from Haskins through the Conspirator's scheme exceeds $274,189.08.

## ALTER EGOS

132.    On information and belief, on or about April 5, 2024, Hill formed BLK Bullies with a reported principal place of business of 1110 Brickell Ave., Ste. 400K-191 Miami, FL 33131. However, BLK Bullies was an alter-ego of Hill and Pennel created for the purposes of the schemes described herein.

133.    Pennel and Hill dominated and controlled BLK Bullies to such an extent that the corporation's independent existence was in fact non-existent.

134.    BLK Bullies was established specifically to defraud Haskins.

135.    BLK Bullies harmed Haskins.

136.    Boss Enters. was established and used for fraudulent purposes, including to defraud Haskins and attempt to shield Hill and her coconspirators from their unlawful actions and illegal credit services organization.

137.    Boss Enters. harmed Haskins by selling Haskins fraudulent and illegal credit services organization services.

138.    Hill also dominated and controlled Boss Enters. to such an extent that the corporation's independent existence was in fact non-existent.

139.    Haskins was solicited by Hill from Florida to purchase and purchased Conspirators' Credit Services Organization Services for Haskins' personal credit in Florida and for businesses

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

that Haskins wished to establish in Florida to improve Haskins' personal credit, but Hill used Boss Enters. to hide her and her Conspirators' unlawful activities.

## ILLEGAL CREDIT REPAIR AND CREDIT SERVICES ORGANIZATION

140.    The Conspirators violated federal law when they operated as a "credit repair organization" in that in furtherance of their scheme they used the instrumentalities of interstate commerce or the mails to sell, provide, or perform and represent that such they can provide, or perform services, in return for the payment of money or other valuable consideration, for the express and implied purpose of improving Haskin's credit record, credit history, or credit rating.

141.    The Conspirators violated Florida Law when they

(1)   Charged or received money and other valuable consideration prior to full and complete performance of the services under the Credit Services Organization Agreement with Haskins;

(2) failed to deposit all money or other valuable consideration received in its trust account until the full and complete performance of the services Hill agreed to provide Haskins;

(2)   Charged and received money and other valuable consideration solely for referral of Haskins to retail sellers and other credit grantors, who have, will or may extend credit to Haskins if the where the credit that is/was or will be extended to Haskins is upon substantially the same terms as those available to the general public;

(3)   counseled and advised Haskins to make false or misleading statements or that should be known by the exercise of reasonable care to be false or misleading, and also encouraged Haskins to omit material facts; and,

(4)   Hill made false and misleading representations and omitted material facts in the offer or sale of the pursuant to the Credit Services Organization Agreement. Hill engaged, directly or indirectly, in acts, practices, or course of business that operates or would operate as fraud or deception upon Haskins person in connection with Hill's offer or sale of the services of Hill's credit service organization.

Fla. Stat § 817.700.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

142.     The Conspirators also violated § 817.405, by failing to have a writing, dated, signed by Haskins, that included all of the following:

(a)   A conspicuous statement in boldfaced type, in immediate proximity to the space reserved for the signature of the buyer, as follows: "You, the buyer, may cancel this contract at any time prior to midnight of the fifth day after the date of the transaction. See the attached notice of cancellation form for an explanation of this right";

(b)   The terms and conditions of payment, including the total of all payments to be made by the buyer, specifying the amount of the payments to be made to the credit service organization or to some other person;

(c)   A full and detailed description of the services to be performed by the credit service organization for the buyer, including all guarantees and all promises of full or partial refunds, and the estimated date by which the services are to be performed or the estimated length of time for performing the services; and

(d)   The credit service organization's principal business address and the name and address of its agent in the state authorized to receive service of process.

(2)   The contract shall be accompanied by a completed form in duplicate, captioned "Notice of Cancellation," that shall be attached to the contract, be easily detachable, and contain in boldfaced type the following statement written in the same language used in the contract and as prescribed by statute.

143.     The Conspirators violated Fla. Stat. § 817.702 when the Conspirators failed upon execution of the Credit Services Organization Agreement described in paragraphs 39 to  48 above, and before the receipt by the credit service organization of any money or other valuable consideration, a statement to Haskins, in writing, containing all the information required by Fla. Stat § 817.703.

144.     Upon information and belief, neither the Conspirators nor Boss Enters. have a bond nor license to operate a credit service organization in Florida or anywhere else.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## ILLEGAL TALENT AGENCY

145.   Hill who resides in Broward County Florida represented to Haskins that she would manage Haskins professionally and as her "talent agent" and represented to Haskins that Hill represented and managed many other clients as their "talent agent."

146.   Based upon information and belief, Hill does not possess a talent agent license in Florida, but represents multiple talent clients. Owning or operating, or soliciting business as, a talent agency in this state without first procuring a license from the department constitutes a felony of the third degree, punishable as provided in Fla. Stat. § 775.082; 775.083; and, 775.084.

## THE RED FLAGS

147.   Around or about August of 2024, Hill told Haskins that Haskins was approved for a $300,000.00 loan and that Haskins should take that loan and pay another person $70,000.00. This did not make sense to Haskins.

148.   When Haskins confronted Hill about accepting a $300,000.00 loan and then being directed by Hill to use the loan to make payment to someone else, Hill explained to Haskins that Hill had previously been accused of "money laundering," but "not to worry." Hill told Haskins that Haskins should just take the loan and pay the person that Haskins did not know. Hill assured Haskins that Haskins could just go bankrupt and not pay back the loan. Hill told Haskins that Hill had done that many times.

149.   This did not make sense to Haskins, so Haskins immediately declined the loan and demanded her money back from Hill.

150.   At approximately the same time, Faith Reynolds, a housekeeper for Hill told Haskins that Hill needed money. This did not make sense to Haskins, because Haskins understood that Hill was wealthy and managing money for many clients and talent.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

151.    Haskins also checked the status of the Florida entities that Hill was collecting service fees for based upon the fraudulent credit service organization invoices and receipts and realized that Hill had not formed or incorporated the companies as Hill agreed.

152.    Compo admitted to Haskins that he was sharing his fees and receiving kickbacks from the other Conspirators.

153.    Around July 2024, Compo sent Haskins a proposal allegedly memorializing his prior scope of work and future scope of work, and it was very inaccurate. See **Exhibit AQ**. Notably it had no mention of the Credit Services Organization Agreement and Compo had never promised or indicated to Haskins that he would leave his existing employment. Rather, Haskins understood that Compo was continuing to actively work with his clothing lines and various social media accounts as an influencer reputation repairer builder for celebrities, including Pennel.

154.    Haskins paid Compo to complete the projects due in August, rejected the proposal and eventually demanded the return of her merchandise.

155.    When Haskins confronted Hill and Pennel about the dogs, shared profits, and kickbacks with Compo, Compo immediately began ghosting Haskins. The websites and social media that Compo was allegedly creating for Haskins failed to launch in August as planned and Compo failed to return Haskins' merchandise.

156.    Haskins demanded that Hill and Pennel return Haskins' Dogs and Haskins' money.

157.    In response, Hill advised Haskins that because she was using corporations, Haskins would have no source of recovery.  Hill advised Haskins that Pennel's name is not on any of their businesses together to avoid paying other obligations that Pennel has in California.

158.    Despite recently giving birth, Haskins began investigating the truth of the whereabouts of Haskins' Dogs in the hopes of recovering them. Haskins contacted

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Lt. Jack Kearney, Chief Deputy of the Allegheny County Sheriff's Office and former chief of security for the Pittsburg Steelers to report her dogs missing as she was unable to reach Pennel. Haskins contacted Kearney, because she trusted Kearney and knew Kearney through her deceased husband, Dwayne Haskins, Jr.

159. On information and belief as part of his investigation, Kearney contacted his colleague and president of security at The Kansas City Chiefs, Jeff Miller, who was also the 18th Commissioner of the Pennsylvania State Police. Miller contacted director of player engagement Ramzee Bino Robinson ("***Bino***").

160. On information and belief when Bino confronted Pennel, Pennel provided contradictory statements and denied that Hill was anything more than his son's mother.

161. On or about August 15, 2024, Haskins traveled to Santo Domingo, in hopes of finding Brutus and the puppies.

162. Haskins requested multiple times for an address to retrieve Haskins Dogs' from Hill and Pennel, but was provided with no address. So, Haskins went to the address previously provided by Nunez, but upon arriving it was a fake address.

163. Haskins then drove from Santo Domingo to Puerto Plata and Sosua where Dr. De La Cruz's offices were located. Dr. De La Cruz was the vet that was allegedly treating Haskins' Dogs and that had allegedly cremated Boujee. Notably, some of the invoices provided to Haskins used Dr. De La Cruz's name and trademark logo. See **Exhibit AQ.**

164. On August 16 and 17, 2024 Haskins went to Dr. De La Cruz's Sosua and Puerto Plata offices. While at the veterinarian's office, Dr. De La Cruz confirmed the invoice to Haskins was fake and that he had never seen nor treated B&B.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

165. On or about August 16, Rocko reached out to Pennel via telephone and text message enquiring about the whereabouts of the dogs. Pennel said that the Brutus was shipped to San Franscisco California, and provided the handler's contact information. Then, Rocko started a group message with the alleged handler and Pennel. In the group chat, the alleged handler said "**we aint got yo dog**" followed by two skulls, a sad face and five checks.



166. When confronted with these facts, Hill and Pennel extorted Haskins. Hill and Pennel threatened Haskins if Haskins continued to investigate the whereabouts of Haskins' Dogs and did not continue to pay Compo for the social media services, Hill for the dog services, credit services and management services that Hill and Pennel would publicly defame Haskins and interfere with the Estate of Dwayne Haskins Jr. by exposing secrets that Haskins entrusted to Hill as her agent and business manager.

167. On information and belief, in retaliation and in furtherance of her extortion, Hill used and/or provided confidential and or privileged information that Hill learned from Haskins to Dwayne Haskins Jr.'s Parents and their attorneys that was false and intended to intimidate, threaten, and harm Haskins.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

168. In fact, Hill and Pennel went so far as to hire Dwayne Haskins Jr.'s Parents own attorneys to sue Haskins for defamation and other causes of action that Hill and Pennel allege they were damaged due to Haskins' demanding the return of Haskins' Dogs, which Hill and Pennel claim died and/or were destroyed while in the care of Hill and Pennel. See the ***Pennel and Hill Suits.***

169. Based upon the foregoing and other facts stated herein, it is also believed that the Conspirators share profits of their civil conspiracy.

170. All conditions precedent to this action have been performed, satisfied, waived, excused or are otherwise futile.

## COUNT I VIOLATION OF THE CREDIT REPAIR ORGANIZATIONS ACT
(Against the Conspirators and Boss Enters.)

171. Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

172. Conspirators and Boss Enters. violated the Credit Repair Organizations Act, 15 U.S.C. § 1679b(b), by charging and receiving money and other valuable consideration for the performance of services for which Conspirators agreed to perform for Haskins before such services were fully performed.

173. Conspirators and Boss Enters. violated the Credit Repair Organizations Act, 15 U.S.C. § 1679b(a), by counseling and advising Haskins to make untrue or misleading statements or making untrue or misleading statements on behalf of Haskins, which, upon the exercise of reasonable care, should be known by Conspirators to be untrue or misleading, with respect to Haskins' credit worthiness, credit standing and credit capacity to consumer reporting agencies or persons who Haskins applied for or intended to apply for an extensions of credit.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

174.    Conspirators and Boss Enters. made untrue or misleading representations of the credit repair organization and engaged, directly and indirectly, in acts, practices, and a course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on Haskins in connection with the offer or sale of the services of the credit repair organization.

175.    Conspirators and Boss Enters. failed to make the required 15 U.S.C. § 1679c(1) disclosures to Haskins.

176.    Conspirators and Boss Enters. failed to obtain a written and dated contract with Haskins as required under 15 U.S.C. § 1679d.

177.    Pursuant to 15 USC § 1679f the Credit Services Agreement is void and may not be enforced by any Federal Sate court or any other person.

178.    Pursuant to 15 U.S.C. § 1679g(a)(1) for failing to comply with the provisions of 15 U.S.C. § 1679 et seq , Conspirators are liable to Haskins for actual damages, including the greater of  (A) the amount of any actual damage sustained by Haskins due to Conspirators' failure; or (B) any amount paid by Haskins to Conspirators or Boss Entrs. the credit repair organization.

179.    Pursuant to 15 U.S.C. § 1679g(a)(2) for failing to comply with the provisions of 15 U.S.C. § 1679 et seq, Conspirators and Boss Enters. are liable to Haskins for punitive damages, including such additional amounts as the court may allow.

180.    Pursuant to 15 U.S.C. § 1679g(a)(3) for failing to comply with the provisions of 15 U.S.C. § 1679 et seq , Conspirators and Boss Enters. are also liable to Haskins for such additional amounts as the court may allow.

181.    Conspirators frequently, persistently and intentionally failed to comply with 15 U.S.C. § 1679 et seq.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

**WHEREFORE**, Plaintiff Haskins respectfully requests that this Court enter final judgment against defendant Conspirators, damages against Conspirators, punitive damages, and such further relief based upon all damages and equities to be determined at trial, and awarding Haskins her reasonable attorneys' fees and costs, and such other further relief as this Court deems just and proper.

## COUNT II – VIOLATION OF FLORIDA'S CREDIT SERVICE ORGANIZATION LAW
(Action for Damages Pursuant to Fla. Stat. § 817.706)
(Against Conspirators and Boss Enters.)

182. Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

183. Haskins was injured by Conspirators and Boss Enters. violations of Fla. Stat. § 817.706.

184. In addition to the other counts herein, Haskins is entitled to actual damages in no less than the amount paid by Haskins to Hill and/or Boss Enters., plus reasonable attorneys' fees and costs. Fla. Stat. § 817.706(1).

**WHEREFORE**, Plaintiff Haskins respectfully requests that this Court enter final judgment against defendant Hill, damages against Defendant Hill, punitive damages, attorneys' fees and costs and such further relief based upon all damages and equities to be determined at trial, and awarding Haskins her reasonable attorneys' fees and costs, and such other further relief as this Court deems just and proper.

## COUNT III FRAUD
(Against all Defendants)

185. Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

33

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

186. In furtherance of their scheme each of the Defendants made false statements concerning a material facts, knowing that those statements were false with the intent to induce Haskins to act upon the misrepresentations.

187. Haskins reasonably relied upon the false statements of the Defendants and was injured by the Defendants.

188. Specifically, Haskins was injured when she relied upon:

    a.    Hill's misrepresentations to Haskins that Hill personally worked with celebrities such as Rihanna, Rick Ross, Kanye West, and Mariah Carey and McMilliam. These misrepresentations fraudulently induced Haskins into agreeing to hire Hill as her manager and talent agent;

    b.    Hill's misrepresentations to Haskins that Hill was capable of editing Haskins' credit history;

    c.    Hill's misrepresentations to Haskins that Hill would get Haskins and each of her business multimillion dollar credit lines;

    d.    Hill and Compo's misrepresentations to Haskins that they would improve Haskins' public image and clean up the history of Haskins on the Internet to improve Haskins' credit;

    e.    Pennel's misrepresentation to Haskins that he operated a safe breeding operation and that he would personally be involved in overseeing the care of Haskins' Dogs;

    f.    Pennel and Hills misrepresentations to Haskins that Haskins' Dogs were under the care of Dr. De La Cruz in the Dominican Republic;

ASSOULINE & BERLOWE, P.A.

Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

g.   Pennel's misrepresentations to Haskins that Brutus and the litter from Boujee were in San Fransisco;

h.   Compo's misrepresentations that he would work with Hill and Pennel to launch Haskins businesses, their websites and social media in August 2024; and,

i.   Conspirators misrepresentations that the invoices that they provided Haskins were for services rendered, that the costs were accurate, and the taxes on the invoices legitimate and paid.

189.   Hill, Pennel and Compo concealed their respective actions through of their scheme to take advantage of Haskins.

190.   Conspirators directly and indirectly by and through their instrumentalities BLK Bullies and Boss Enters. profited from Conspirators' scheme.

**WHEREFORE**, Plaintiff Haskins respectfully requests that this Court enter final judgment against Defendants, based upon damages to be determined at trial, punitive damages, and such other further relief as this Court deems just and proper.

## <u>COUNT IV REPLEVIN</u>
(Against Hill, Pennel and BLK Bullies)

191.   Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

192.   This is an action to recover Haskins' Dogs in possession of Pennel and Hill.

193.   To the best of Haskins' knowledge, information, and belief, the value of Haskins' Dogs is at least $80,000.00.

194.   Haskins is entitled to the possession of Haskins' Dogs that belong to her.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

195.     To Haskins' best knowledge, information, and belief, Haskins' Dogs are controlled by Pennel and Hill.

196.     Haskins' Dogs are wrongfully detained by Pennel and Hill, and Pennel and Hill came into possession of Haskins' Dogs through the scheme described herein.

197.     To Haskins' best knowledge, information, and belief, Pennel and Hill detain Haskins' Dogs because Defendants Pennel and Hill wish to use Haskins' Dogs for Defendants own personal benefit and profit.

198.     On information and belief, Haskins' Dogs have not been taken for any tax, assessment, or fine pursuant to law

199.     Haskins' Dogs have not been taken under an execution or attachment against Haskins' property.

**WHEREFORE,** Haskins demands judgment for possession of Haskins' Dogs, and such other relief is fair just and equitable.

## <u>COUNT V CONVERSION</u>
(Against Hill, Pennel and BLK Bullies)

200.     Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

201.     This is an action to recover damages for Hill, Pennel and BLK Bullies conversion of Haskins' Dogs.

202.     To the best of Haskins' knowledge, information, and belief, the value of Haskins' Dogs is at least $80,000.00, but their expected breeding value is much greater.

203.     To Haskins' best knowledge, information, and belief, Haskins' Dogs are controlled by Pennel and Hill and have been used by Pennel and Hill in their breeding operation BLK Bullies.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

204.    Haskins' Dogs are wrongfully detained by Pennel and Hill, and Pennel and Hill came into possession of Haskins' Dogs through the scheme described herein.

205.    To Haskins' best knowledge, information, and belief, Pennel and Hill detain Haskins' Dogs because Defendants Pennel and Hill wish to use Haskins' Dogs for Defendants own personal benefit and profit.

**WHEREFORE**, Plaintiff Haskins hereby demands judgment against Defendants, Hill, Pennel and BLK Bullies for damages, pre-judgment and post-judgment interest, costs, and any other relief that may be just or necessary under the circumstances.

## COUNT VI DECEPTIVE AND UNFAIR TRADE PRACTICES
(Against all Defendants)

206.    Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

207.    The Florida Deceptive and Unfair Trade Practices Act ("*FDUTPA*") renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

208.    At all relevant times, Plaintiff Haskins was a consumer. See Fla. Stat. § 501.203(7).

209.    In addition to the other deceptive and unfair trade practices described herein, Hill also violated Fla. Stat. § 817.806 by operating her "Credit counseling agency" for confidential money management, debt reduction, and financial educational services. Hill charged and accepted from Haskins, directly or indirectly, a fee or contribution greater than $50 for the initial setup or initial consultation. Subsequently, Haskins charged and accepted fees and or contributions from Haskins greater than $120 per year for additional consultations.

210.    By violating the provisions of Fla. Stat. § 817.806 Hill committed unfair and deceptive trade practice as defined in part II of chapter 501. Judgment shall be entered for actual

damages, but in no case less than the amount paid by the consumer to the credit counseling agency, plus reasonable attorney's fees and costs.

211.    Defendant's practices are unfair and deceptive.

212.    As a result of Defendants' unfair and deceptive practices, Haskins was damaged.

**WHEREFORE,** Plaintiff Haskins respectfully requests a declaratory judgment that Defendants violated the Act and an injunction enjoining future violations of the Act pursuant to Fla. Stat. § 501.211(1), actual damages for violation of the Act pursuant to Fla. Stat. § 501.211(2), monetary damages, an award of attorney's fees and costs pursuant to Fla. Stat. § 501.211(2) and 501.2105, and such other relief that this Court deems just and proper.

## COUNT VII FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES
(Against all Defendants)

213.    Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

214.    Hill, Pennel and Compo on no less than three separate occasions:

a.    Offered, invoiced and accepted payment from Haskins for the Credit Services Agreement and violated Chapter 817, relating to fraudulent practices, false pretenses, fraud generally, and credit crimes;

b.    If furtherance of their intent and scheme to defraud Haskins and for obtaining Haskins' money and property by means of false or fraudulent pretenses, representations, and promises, Defendants transmitted and caused to be transmitted by wire or radio in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice,

38

c.      Extorted or attempted to extort Haskins when Hill and Pennel, without any evidence, threatened to impute disgrace to Haskins' deceased husband Dwayne Haskins, Jr.; and, those threats were made with the intent to extort money and pecuniary advantage from Haskins, including further management fees and to compel Haskins to refrain from notifying the police and seeking the return of Haskins' Dogs.

d.      Obtained fraudulently procured and unconscionable profits as a result and in furtherance of their frauds.

215.    Additionally, the Defendants made the fraudulent misrepresentations to Haskins identified in paragraph 188 above, which is incorporated herein by its entirety.

216.    These acts were part of a continuing and purposeful endeavor of the Conspirators, and Hill and Pennel's alter-egos Boss Enters. and BLK Bullies to repeatedly profit from fraudulent conduct at the expense of Haskins;

217.    In carrying out the acts described hereinabove, Conspirators had a conscious awareness that: (i) they were acting in such a manner that would cause harm to Haskins for their own personal gain and advantage; (ii) Conspirators actions were resulting in acquisition of money that did not lawfully belong to them; and (iii) their actions were in violation of Florida law.

218.    The acts described hereinabove constitute a "pattern of criminal activity" as that term is defined in Section 772.102, Florida Statutes.

219.    Accordingly, Conspirators are persons:

a.      Who have, with criminal intent, received proceeds, derived directly or indirectly, from a pattern of criminal activity through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of

39

such proceeds, or the proceeds derived from the investment or use thereof, in the . . . establishment or operation of any enterprise.

b.   Through a pattern of criminal activity or through the collection of an unlawful debt, who has acquired or maintained, directly or indirectly, an interest in or control of any enterprise.

c.   Were employed by, or associated with, any enterprise to conduct, participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

d.   Who conspired or endeavored to violate any of the provisions of subsection (1), subsection (2), or subsection (3) of Section 772.103, Florida Statutes.

e.   As a direct and proximate result of the criminal acts of Conspirators, Haskins has been damaged and is entitled under Section 772.104, Florida Statutes to bring this civil action to redress her injuries.

f.   Pursuant to Section 772.104, Florida Statutes, Haskins is entitled to three times the damages she has sustained as a direct and proximate result of the criminal acts of Hill set forth herein.

**WHEREFORE**, Plaintiff Haskins, respectfully requests that this Court enter final judgment against Defendants Hill, Pennel and Compo awarding treble damages against Defendants Hill, Pennel and Compo, based upon damages to be determined at trial, and awarding Haskins her reasonable attorneys' fees and costs, and such other further relief as this Court deems just and proper.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## COUNT VIII BREACH OF CONTRACT
(against Hill and Boss Entrs.)

220.   Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

221.   Hill and Boss Entrs. proposed and Haskins accepted the Credit Service Organization Services Agreement.

222.   Hill and Boss Entrs. have materially breached the Credit Service Organization Services Agreement by *inter alia* failing to provide the services as agreed by the parties.

223.   As a direct and proximate cause of Hill and Boss Entrs.' material breach of contract, Haskins has and will continue to incur damages.

**WHEREFORE**, Plaintiff Haskins hereby demands judgment against Defendant, Hill and Boss Entrs. for damages, pre-judgment and post-judgment interest, costs, and any other relief that may be just or necessary under the circumstances.

## COUNT IX BREACH OF CONTRACT
(against Hill, Pennel and Blk Bullies)

224.   Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

225.   Defendants Hill and Pennel agreed to undertake breeding of B&B by way of a valid and enforceable agreement between Haskins, Pennel and Hill (the "***Breeding Agreement***").

226.   Pennel and Hill materially breached the Breeding Agreement by failing to breed and care for B&B as agreed by the parties.

227.   Haskins paid Hill and Pennel by paying invoices she received from their Company BLK Bullies.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

228.    As a direct and proximate cause of Hill and Pennel's material breach of contract, Haskins has and will continue to incur damages.

**WHEREFORE**, Plaintiff Haskins hereby demands judgment against Defendants, Hill, Pennel and Blk Bullies for damages, expectation damages, lost profits, pre-judgment and post-judgment interest, costs, and any other relief that may be just or necessary under the circumstances.

## COUNT X BREACH OF CONTRACT
(against Compo)

229.    Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

230.    Compo and Haskins had an agreement whereby Compo would:

   a.    establish social media and website ecommerce platforms for Haskins' brands that Haskins' was launching in august including but not limited to Kalabrya's Kloset, the Dwayne Haskins Jr. Foundation, Kingdom of Pride, and Boujchic;

   b.    use his own clothing company that to help Haskins with her businesses that she was planning on launch in August;

   c.    clean Haskins' online presence and build Haskins' credit and public image through the Internet campaign led by Compo;

   d.    assist Hill with the credit repair and building for Haskins by building Haskins' online identity and procuring and managing social media accounts regarding Haskins name and likeness including that of her various brands that she was launching;

   e.    create shirts and merchandise for Haskins businesses she was launching in August; and,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

f.   remove (or cause to be removed) all the pages that impersonated Haskins on the Internet deleted and remove any pages that were using Haskins' trademark business names.

(collectively the "***Compo Agreement***").

231.   As per Compo's instructions, Haskins had her merchandise shipped to Compo, who Haskins was trusting to work with Hill and Pennel to build the various brands to be launched in August of 2024.

232.   Compo has materially breached the Compo Agreement by failing to perform as agreed by the parties.

233.   As a direct and proximate cause of Compo's material breach of contract, Haskins has and will continue to incur damages.

**WHEREFORE**, Plaintiff Haskins hereby demands judgment against Defendants, Compo and Hill for damages, expectation damages, lost profits, pre-judgment and post-judgment interest, costs, and any other relief that may be just or necessary under the circumstances.

## COUNT XI BREACH OF FIDUCIARY DUTY
(Against Hill, Pennel, Blk Bullies, and Boss Entrs.)

234.   Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

235.   Plaintiff Haskins and Defendants Hill and Pennel share a relationship whereby (a) Haskins reposed trust and confidence in Defendants Hill and Pennel, and (b) Defendants Hill and Pennel undertook such trust and assumed a duty to advise, counsel and/or protect Haskins.

236.   Haskins paid and entrusted Hill and Pennel as family to care after Haskins' Dogs and breed and care for them.

237.   Haskins also trusted Hill as Haskins manager and agent.

43

238.    Haskins had a confidential relationship with Hill.

239.    Hill breached her fiduciary relationship with Haskins by providing personal, privileged, and confidential information to Dwayne Hakins, Jr.'s parents that Jill only had access to as Haskins' agent and manager. Hill did this in furtherance of the extortion plot. Hill knew through her fiduciary relationship with Haskins that Haskins was currently in a legal dispute with Dwayne Haskins, Jr.'s parents over the assets of his estate.

240.    Defendants Hill Pennel and Blk Bullies breached their duties to Plaintiff.

241.    Defendant's breach caused Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff Haskins consequential damages, expectation damages, lost profits,  and punitive damages against Defendants Hill, Pennel, Blk Bullies, and Boss Enters. for breach of fiduciary duty and such other relief this Court deems just and proper.

## COUNT XII – UNJUST ENRICHMENT
(against all Defendants)

242.    Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

243.    Plaintiff Haskins conferred a substantial benefit upon Defendants, by providing hundreds of thousands of dollars in fees and merchandise.

244.    Plaintiff Haskins also conferred a substantial benefit upon Defendants Hill, Pennel and Blk Bullies. by providing Haskins' Dogs, the medications for Haskins' Dogs, and other items of value which are worth at least $80,000.00.

245.    Defendants knew of and accepted the substantial benefit of the cash and Haskins Dogs provided to Defendants in connection with their scheme.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

246. Since Defendants have retained the benefit conferred upon them by Haskins, it would be unjust and inequitable to allow Defendants to knowingly receive and accept this benefit without paying for the value of same.

**WHEREFORE**, Plaintiff Haskins demands judgment against Defendants for damages, pre-judgment and post-judgment interest, costs, and any other relief that may be just or necessary under the circumstances.

## COUNT XIII REPLEVIN
(Against Compo)

247. Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

248. This is an action to recover Haskins' Merchandise in possession of Compo.

249. Haskins is entitled to the possession of Haskins' Merchandise that belongs to her.

250. To Haskins' best knowledge, information, and belief, Haskins' Merchandise is in the possession and control of Compo.

251. Haskins' Merchandise is wrongfully detained by Compo, and Compo came into possession of Merchandise through the scheme described herein.

252. To Haskins' best knowledge, information, and belief, Compo detains Haskins' Merchandise because Compo wishes to use Haskins' Merchandise for Compo's own personal benefit and profit.

253. On information and belief, Haskins' Merchandise has not been taken for any tax, assessment, or fine pursuant to law

254. Haskins' Merchandise have not been taken under an execution or attachment against plaintiff's property.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

**WHEREFORE,** Haskins demands judgment for possession of Haskins' Merchandise, and such other relief is fair just and equitable.

## COUNT XIV CONVERSION
(Against Compo)

255.   Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety

256.   To the best of Haskins' knowledge, information, and belief, the value of Haskins' Merchandise is at least $3,000.00.

257.   To Haskins' best knowledge, information, and belief, Haskins' Merchandise is in the possession and control of Compo.

258.   Haskins' Merchandise is wrongfully detained by Compo, and Compo came into possession of Merchandise through the scheme described herein.

259.   To Haskins' best knowledge, information, and belief, Compo detains Haskins' Merchandise because Compo is using Haskins' Merchandise for Compo's personal benefit and profit.

**WHEREFORE**, Plaintiff Haskins hereby demands judgment against Defendant Compo for damages, pre-judgment and post-judgment interest, costs, and any other relief that may be just or necessary under the circumstances.

## COUNT XV RESCISSION
(Against Hill and Boss Enters.)

260.   Plaintiff Haskins reincorporates and realleged paragraphs 1 - 170 as if set forth herein in their entirety.

261.   Hill was Haskins' business and talent manager.

**ASSOULINE & BERLOWE, P.A**.
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

262.    Hill convinced Haskins pursuant to the Credit Services Organization Agreement described in paragraphs 39 to 48 above, that Hill could repair and improve Haskins's credit and obtain new lines of credit for Haskins.

263.    Hill's misrepresentations to Haskins were fraudulent or false.

264.    Moreover, it is impossible for Hill to perform the services for which she claims as she is unlicensed and the services or illegal.

265.    Hill has failed to provide the services but has taken Haskins' money.

266.    Haskins has rescinded the Credit Services Organization Agreement and notified Hill of such rescission.

267.    Haskins has not received any benefits from the Credit Services Organization Agreement, but if she had she would agree to restore those benefits to Hill.

268.    Haskins has no adequate remedy at law.

**WHEREFORE**, Plaintiff Haskins, respectfully requests that this Court enter final judgment against defendant Hill rescinding the Credit Services Organization Agreement, awarding damages against Defendant Hill, and such other further relief as this Court deems just and proper.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all claims and issues so triable.

DATED:  November 21, 2024

Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**

By:  s/Peter A. Koziol
Peter A. Koziol, Esq. (FBN 30446)
pak@assoulineberlowe.com
Andres J. Caldera, Esq. (FBN 1036165)
ajc@assoulineberlowe.com

Miami Tower
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131
Telephone: (305) 567-5576
Facsimile: (305) 567-9343

*Attorneys for Plaintiff,*
*Kalabrya Haskins*

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE 2nd St., Suite 3105, Miami, Florida 33131 • Telephone: 305-567-5576 • Facsimile: 305-567-9343